**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>vs.<br><br>CHARLES THOMAS,<br><br>      Defendant. | No. 07-CR-1024-LRR<br><br>**ORDER** |

*TABLE OF CONTENTS*

*I.*     *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

*II.*    *RELEVANT PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . *1*

*III.*   *FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*IV.*   *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
      *A.*   *Authority to Entertain Motion* . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
      *B.*   *Background on § 2250 and § 16913* . . . . . . . . . . . . . . . . . . . . . . *5*
      *C.*   *Background on the Commerce Clause* . . . . . . . . . . . . . . . . . . . . . *7*
      *D.*   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *9*
           *1.*   *§ 2250* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *9*
           *2.*   *§ 16913* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *13*

*V.*    *DISPOSITION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *18*

## *I. INTRODUCTION*

    The matter before the court is Defendant Charles Thomas's Motion to Dismiss ("Motion") (docket no. 12).

## *II. RELEVANT PRIOR PROCEEDINGS*

    On November 28, 2007, a grand jury returned a one-count Indictment against Defendant. Count 1 of the Indictment charges:

> Between about October 10, 2007[,] and about October 24, 2007, within the Northern District of Iowa and elsewhere, [D]efendant **CHARLES EDWARD THOMAS**, an individual who was required to register pursuant to the Sex Offender Registration and Notification Act, as a result of being convicted on October 5, 2000, in the State of Iowa of Sexual Abuse in the Third Degree, a violation of Iowa Code [s]ections 709.4(1) and 709(2)(c)(4),[1] a felony, having, after said conviction, traveled in interstate commerce, did knowingly fail to register and update registration as required by the Sex Offender Registration and Notification Act.
>
> This in violation of Title 18, United States Code, Section 2250(a).

Indictment (docket no. 1), at 1 (emphasis in original).

On January 14, 2008, Defendant filed the Motion. On January 28, 2008, the government filed a Resistance.

On January 31, 2008, the court held a hearing on the Motion. Assistant United States Attorney Kandice A. Wilcox represented the government. Assistant Federal Public Defender JoAnne Lilledahl represented Defendant, who was personally present. The Motion is fully submitted and ready for decision.

### III. FACTUAL BACKGROUND

In the Motion, Defendant represents to the court that, if this matter were to proceed to trial, the government would be able to prove the following facts:[2]

---

[1] The court notes that the latter alleged statute does not exist and has never existed.

[2] The facts are included for the sake of background and completeness only and played no part in the court's analysis of the Motion. *See United States v. Ferro*, 252 F.3d 964, 968 (8th Cir. 2001) ("'[W]e simply cannot approve dismissal of an indictment on the basis of predictions as to what the trial evidence will be.'" (quoting *United States v. DeLaurentis*, 230 F.3d 659, 661 (3d Cir. 2000)); *see also infra* note 3 (explaining why the
(continued…)

> On October 5, 2000, [Defendant] was sentenced, after a guilty plea, on one count of Sexual Abuse in the Third Degree in the State of Iowa. He received a 10-year sentence and was discharged in 2005. It appears [Defendant] completed his initial registration for the State of Iowa on October 28, 2005. He filled out a number of Sex Offender Registration Forms since that time.
>
> In September 2007, [Defendant] was living in Prarie du Chien, Wisconsin, and working in Iowa. He lost his job. He was evicted from his residence on September 13, 2007. He began living in his car. From September 13, 2007[,] to October 9, 2007, he lived in his car in Wisconsin. On October 9, 2007, he was arrested in Crawford County, Wisconsin, for operating a vehicle after suspension or revocation.
>
> From October 10, 2007[,] to October 24, 2007, he lived in his car in various parking lots around McGregor, Iowa. On October 24, 2007, he was arrested at the City Parking Lot on Main and 4th Streets in McGregor, Iowa. He was charged with Failure to Comply with Sex Offender Registry Requirements, an aggravated misdemeanor under Iowa law. He has been detained since that date.

Brief in Support of Motion (docket no. 12-2), at 1-2. The government does not dispute Defendant's recitation of the facts.

## IV. ANALYSIS

The Indictment is based upon two important provisions of the recent Sex Offender Registration and Notification Act ("SORNA"), that is, Title I of the Adam Walsh Child Protection and Safety Act of 2006 ("Adam Walsh Act"), Pub. L. 109-248, 120 Stat. 587 (July 27, 2006). *See* Adam Walsh Act § 101 ("This title may be cited as the 'Sex Offender Registration and Notification Act[.']"). The first provision at issue is § 141(a)(1), which is codified at 18 U.S.C. § 2250 (hereinafter "§ 2250"). Section 2250 makes it a crime for

---

²(…continued)
Motion presents a facial challenge, not an as-applied challenge).

certain persons to fail to register as sex offenders after traveling in interstate commerce. The second provision at issue is § 113, which is codified at 42 U.S.C. § 16913 (hereinafter "§ 16913"). Section 16913 contains SORNA's underlying registration requirements.

In the Motion, Defendant asks the court to dismiss the Indictment. Defendant argues that § 2250 and § 16913 are impermissible exercises of Congressional authority and cannot be justified under the Commerce Clause, U.S. Const. art. I, § 8, cl. 3. Defendant maintains that Congress lacks the power under the Commerce Clause to make it a crime for sex offenders to fail to register after traveling in interstate commerce and, in any event, lacks the power in the first instance to require all sex offenders to register. Defendant posits that § 2250(a) and § 16913 constitute an impermissible attempt on the part of the government to exercise police power in criminal matters that must be reserved to the States. The government rejoins generally that § 2250(a) and § 16913 are valid exercises of police power under the Commerce Clause.

### A. *Authority to Entertain Motion*

Although not cited in the parties' briefs to the court, Federal Rule of Criminal Procedure 12(b) is the appropriate procedural vehicle for the court to decide the merits of the Motion at this juncture in the proceedings. Federal Rule of Criminal Procedure 12(b)(2) provides that "[a] party may raise by pretrial motion any defense . . . that the court can determine without a trial of the general issue." Fed. R. Crim. P. 12(b)(2). Here, the court is able to rule on the Motion without a trial of the general issue of guilt or innocence. Alternatively, Federal Rule of Criminal Procedure 12(b)(3)(B) provides that, "at any time while the case is pending, the court may hear a claim that the indictment . . . fails to invoke the court's jurisdiction or to state an offense." Fed. R. Crim. P. 12(b)(3)(B). It is settled that a claim that "the indictment . . . fails . . . to state an offense" under Rule 12(b)(3)(B) includes a claim that the statute creating the offense is unconstitutional. *United States v. Seuss*, 474 F.2d 385, 387 n.2 (1st Cir. 1973) (citation

4

omitted); *see also* 24 *Moore's Federal Practice* § 612.04, at 612-13 (3d ed. 2002) ("The defense of failure to charge an offense may be based on . . . the unconstitutionality of the statute relied upon."). Other courts have thus considered Commerce Clause challenges to federal criminal statutes pursuant to Rule 12(b)(3)(B). *See, e.g., United States v. Jeronimo-Bautista*, 425 F.3d 1266, 167-68 (10th Cir. 2005) (examining Commerce Clause challenge to federal criminal statute pursuant to Rule 12(b)(3)(B)). Even if the Federal Rules of Criminal Procedure did not exist, however, the court could nonetheless entertain the Motion. The court possesses an inherent "power . . . to dismiss federal indictments obtained in violation of the Constitution . . . of the United States." *United States v. Holloway*, 74 F.3d 249, 253 (11th Cir. 1996) (citation and internal quotation marks omitted).

### *B. Background on § 2250 and § 16913*

As indicated, Defendant challenges the constitutionality of § 2250 and § 16913. In relevant part, § 2250 provides:

> **§ 2250. Failure to register**
>
> **(a)** **In general.**—Whoever—
>
> **(1)** is required to register under [§ 16913];
>
> **(2)(A)** * * *
>
> **(B)** travels in interstate or foreign commerce, or enters or leaves or resides in, Indian country; and
>
> **(3)** knowingly fails to register or update a registration as required by [§ 16913];
>
> shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2250(a) (emphasis in original). To prove Defendant violated § 2250, then,

5

the government will need to prove three elements at trial: (1) Defendant was required to register under § 16913; (2) Defendant traveled in interstate commerce; and (3) Defendant knowingly failed to register or update a registration as required by § 16913. 18 U.S.C. 2250(a); *see, e.g.*, *United States v. Beasley*, No. 1:07-CR-115-TCB, 2007 WL 3489999, at *4 (N.D. Ga. Oct. 10, 2007) ("As applied to Defendant, the elements of the criminal offense are he: was required to register under SORNA; (2) traveled in interstate commerce; and (3) knowingly failed to register or update a registration as required by SORNA.").

Section 16913, in turn, imposes registration requirements upon each and every "sex offender" in the United States. In relevant part, § 16913 states:

### § 16913. Registry requirements for sex offenders

**(a)    In general**

A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.

**(b)    Initial Registration**

The sex offender shall initially register—
**(1)**    before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or
**(2)**    not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment

**(c)    Keeping the registration current**

A sex offender shall, not later than 3 business days after each

6

> change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. . . .

* * *

42 U.S.C. § 16913 (emphasis in original).

Together, § 2250 and § 16913 were enacted as a "response to the vicious attacks by violent predators against [certain victims]." 42 U.S.C. § 16901. SORNA was designed "to protect the public from sex offenders and offenders against children." *Id.* Elsewhere, SORNA contemplates that each jurisdiction maintain a publically accessible sex offender registry on the Internet. *Id.* § 16918. SORNA also directs the Attorney General to establish and maintain the Dru Sjodin National Sex Offender Public Website, a compilation of the individual jurisdictions' websites. *Id.* § 16920.

SORNA defines "sex offender" as "an individual who was convicted of a sex offense." *Id.* § 16911(1). A "sex offense," in turn, generally includes any criminal offense under state law that has "an element involving a sexual act or sexual contact with another" or "is a specified offense against a minor." *Id.* § 16911(5)-(6). The phrase "specified offense against a minor" includes "[c]riminal sexual conduct involving a minor . . . ," *id.* § 16911(7)(H), where a "minor" is defined as a person under the age of eighteen, *id.* § 16911(14). The term "jurisdiction" encompasses the fifty states, including Iowa. *Id.* § 16911(10)(A). "The term 'resides' means . . . the location of the individual's home or other place where the individual habitually lives." *Id.* § 16911(13).

### C. Background on the Commerce Clause

"Every law enacted by Congress must be based on one or more of its powers enumerated in the Constitution." *United States v. Morrison*, 529 U.S. 598, 607 (2000); *see* U.S. Const. art. I, § 1 (vesting in Congress "[a]ll legislative Powers herein granted").

7

The Commerce Clause is one of these enumerated powers. The Commerce Clause delegates to Congress the power "[t]o regulate Commerce . . . among the several States . . . ." U.S. Const. art. I, § 8, cl. 3. If, as Defendant postulates in his facial challenge to SORNA, either § 2250(a) or § 16913 is not a proper exercise of Congress's Commerce Clause power and exceeds its enumerated powers, the court must dismiss the Indictment. *See, e.g., United States v. Lopez*, 514 U.S. 549, 561-62, 567 (1995) (holding that Congress lacked the power under the Commerce Clause to enact 18 U.S.C. § 922(q)(1)(A) (1988 ed, Supp. V) and affirming dismissal of indictment under such statute); *see also Morrison*, 529 U.S. at 613-15 (holding that Congress lacked the power under the Commerce Clause to enact 42 U.S.C. § 13981 (2000), which provided a federal civil remedy for the victims of gender-motivated violence).[3]

In *Lopez*, the Supreme Court summarized the extent of Congress's Commerce Clause power. The Supreme Court stated that the Commerce Clause grants Congress the power to regulate the following "three broad categories of activity":

> First, Congress may regulate the use of the channels of interstate commerce. Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities. Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, *i.e.*, those activities that substantially affect interstate commerce.

514 U.S. at 558 (citations omitted); *see also United States v. Corum*, 362 F.3d 489, 494 (8th Cir. 2004) (same). The court now turns to consider the constitutionality of § 2250 and

---

[3] *See generally* David L. Franklin, *Facial Challenges, Legislative Purpose, and the Commerce Clause*, 92 Iowa L. Rev. 41, 75-76 (2006) (characterizing *Morrison* and *Lopez* as "facial challenge cases" and indicating that the Supreme Court has signaled in its recent jurisprudence that it rejects an "as-applied approach to Commerce Clause review").

§ 16913 under the *Lopez* framework.

### D. Analysis

#### 1. § 2250

The government does not contend that § 2250 falls within either the first or the third *Lopez* categories of Commerce Clause regulation. The government argues that § 2250 falls within a portion of the second *Lopez* category. Specifically, the government maintains that § 2250 falls within Congress's power under the Commerce Clause to "regulate . . . persons . . . in interstate commerce, even though the threat may come only from intrastate activities." 514 U.S. at 558. The government posits that, even though a sex offender poses only a non-economic intrastate threat, the second element of § 2250 saves the statute. Such second element, a so-called "jurisdictional element" under the Supreme Court's phraseology, *see, e.g.*, *Lopez*, 514 U.S. at 562, and *Morrison*, 529 U.S. 611-12, requires proof that the sex offender who failed to register traveled in interstate commerce. Accordingly, the government concludes that § 2250 has an explicit connection with interstate commerce and establishes that such statute is in pursuance of Congress's regulation of interstate commerce.

Defendant recognizes that, "[a]t first glance, § 2250 might appear to fall into the second *Lopez* category" for the reasons the government advances. Brief in Support of Motion (docket no. 12-2), at 9. Defendant argues, however, that something more than mere travel across state lines is required for activity to fall within the second *Lopez* category. Defendant argues:

> Section 2250 . . . lacks the very important link between the required travel and the offense of failure to register. Unlike other, similar statutes, such as the Travel Act, 18 U.S.C. § 1952, which requires a defendant to travel in interstate commerce with the intent to commit certain criminal acts, the travel element of § 2250 does not require that the travel occur in connection with a defendant's failure to register or avoidance of registration. Thus, the statute establishes no

> connection between the purported jurisdictional element of travel and the criminal act of failing to register.
>
> Furthermore, the statute fails to specify when the travel must have occurred. If a defendant traveled out of state 10 years before he was required to register, he would still have "traveled in interstate . . . commerce" under § 2250. Upholding § 2250 based on this travel requirement would allow Congress to federalize nearly any local criminal offense simply by making it a crime for someone who committed a local offense to travel in interstate commerce at some point in his life. Some nexus must exist between the criminal activity and the interstate travel in order to satisfy the [C]ommerce [C]lause. Because § 2250 contains no such nexus, it cannot be said to regulate "people in interstate commerce." At best, it regulates ["]people who have, at some point in their lives, traveled in interstate commerce.["] As such, the travel requirement in §[]2250 is insufficient by itself to make the statute a legitimate exercise of [C]ommerce [C]lause authority.

Brief in Support of Motion (docket no. 12-2), at 9-10. Defendant concedes that a number of district courts have upheld § 2250 against Commerce Clause challenges. *See, e.g., United States v. Hinen*, 487 F. Supp. 2d 747, 757-78 (W.D. Va. 2007); *United States v. Madera*, 474 F. Supp. 2d 1257, 1265 (M.D. Fla. 2007); *United States v. Cardenas*, No. 07-80108-CR, 2007 WL 4245913, *12 (S.D. Fla. Nov. 29, 2007). Indeed, Defendant does not point to a single case in which a court invalidated § 2250 as beyond the scope of Congress's Commerce Clause power. Rather, Defendant expresses dissatisfaction with the depth of analysis in these district court decisions. In particular, he criticizes the fact that many of these decisions failed to examine the non-economic character and impact of § 2250, including whether the movement of sex offenders across state lines is an activity that substantially affects interstate commerce.

The court holds that § 2250 is a valid exercise of Congress's Commerce Clause power. Section 2250 falls squarely within the second *Lopez* category. Unlike the criminal

statute that the Supreme Court invalidated in *Lopez*, § 2250 does not seek to criminalize purely intrastate activity. Only sex offenders who fail to register or update their registrations after having crossed state lines fall within § 2250's cross-hairs. *Cf. Morrison*, 529 U.S. at 611-12 (discussing *Lopez*, the failure of the statute at issue in *Lopez* to contain a jurisdictional element and stating that "[s]uch jurisdictional element may establish that the enactment is in pursuance of Congress'[s] regulation of interstate commerce"). Two noted constitutional scholars writing in the wake of *Lopez* and its progeny write:

> The statute at issue in *Lopez* was not limited to firearms or individuals that had crossed state lines. . . .
>
> It is important to remember that . . . *Lopez* did not overrule [prior jurisprudence]. Congress will continue to be able to regulate those activities that involve people, products, or transactions that cross state lines. . . . [I]f a regulated single state activity (like the possession of a firearm near a school) is noncommercial in nature, [however,] the federal government must be able to demonstrate that there is a factual basis for finding that the regulated activity has a substantial effect on, or substantial relationship to, interstate commerce . . . .
>
> \* \* \*
>
> The Court will continue to uphold federal laws that . . . regulate activities, persons, products or transactions that cross state . . . boundaries. Thus, the scope of federal power to make activities criminal may be very great, even if the Court prohibits the federal government from regulating certain local activities that have been traditionally the subject of state criminal law.

1 Ronald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law: Substance & Procedure* 648-50 (4th ed. 2007). Section 2250 falls within Congress's broad federal power to regulate persons who cross state boundaries.

Section 2250 is similar to a variety of criminal statutes in the United States Code

that federalize activities that were otherwise the subject of state criminal law. The Supreme Court upheld such criminal statutes long ago. For example, the Mann Act outlaws the transportation of persons across state lines for prostitution or "any sexual activity for which any person can be charged with a criminal offense." 18 U.S.C. § 2421. In upholding the Mann Act against a Commerce Clause challenge, the Supreme Court emphasized:

> Commerce among the states . . . consists of intercourse and traffic between their citizens, and includes the transportation of persons and property. There may be, therefore, a movement of persons as well as of property; that is, a person may move or be moved in interstate commerce. And [the Mann Act] was drawn in view of that possibility. What the [Mann Act] condemns is transportation obtained or aided, or transportation induced, in interstate commerce, for the immoral purposes mentioned.

*Hoke v. United States*, 227 U.S. 308, 321 (1913). Similarly, § 2250 condemns the transportation of the sex offender (albeit self-transportation) across state lines without registering or updating an existing registration.

"[T]he authority of Congress to keep the channels of interstate commerce free from immoral and injurious uses has been frequently sustained and is no longer open to question." *Caminetti v. United States*, 242 U.S. 470, 491 (1917) (cited with approval in *Lopez*, 514 U.S. at 558). Thus, Congress "may forbid or punish the use of channels to promote dishonesty or the spread of any evil or harm across state lines." *United States v. Schaffner*, 258 F.3d 675, 680 (7th Cir. 2001) (citing *Brooks v. United States*, 267 U.S. 432, 436 (1925)). Congress has deemed sex offenders to be inherently dangerous, a threat to public safety in themselves and deserving of extensive monitoring through SORNA's registration requirements. *See* Adam Walsh Act § 102 (stating that the purpose of the Adam Walsh Act is "to protect the public from sex offenders and offenders against children, and in response to the vicious attacks by violent predators against [victims.]").

Congress may regulate the movement of sex offenders across state lines.

Contrary to Defendant's argument, there is a nexus between the interstate travel requirement and the failure to register or update a registration. In a § 2250 prosecution, the government is required to prove that Defendant "knowingly fail[ed] to register or update a registration *as required by* [§ *16913*]." 18 U.S.C. § 2250 (emphasis added). Generally, § 16913 requires sex offenders to register in those jurisdictions where they reside, are employed or are students. Such registration must occur initially "not later than three business days after" sentencing if not sentenced to a term of imprisonment, 42 U.S.C. § 16913(b), must occur initially before completing a sentence of imprisonment given for a sex offense if sentenced to a term of imprisonment, *id.*, and must be updated "not later than three business days after each change of name, residence, employment, or student status . . . ," *id.* Accordingly, § 2250 only criminalizes those sex offenders who fail to register within three or fewer business days of travel across state lines. The nexus between the travel and the failure to register is thus substantial.[4]

Lastly, Defendant's argument that the movement of sex offenders across state lines is not an activity that substantially affects interstate commerce in any economic sense is of no moment here. The substantial-effects test is only applicable when a statute is alleged to fall within the third *Lopez* category, not the second *Lopez* category. *Corum*, 362 F.3d at 494 (citations omitted).

Accordingly, the court holds that § 2250 is constitutional under the Commerce Clause.

### *2.* *§ 16913*

Alternatively, Defendant argues that § 16913 exceeds Congress's Commerce Clause powers and is unconstitutional. Defendant points out that § 16913 requires all sex

---

[4] *Lopez* does not indicate that a nexus is required. The court assumes without deciding that a nexus is required.

offenders in the United States to register; such registration requirement is not limited to merely those sex offenders who travel across state lines. The gist of Defendant's argument is as follows: even if Defendant is otherwise guilty of § 2250(a), his conviction is void because he should not have been required to register under § 16913 in the first place. Section 16913 sweeps too broadly; the first and third elements of a § 2250 prosecution, which incorporate the § 16913 registration requirements, are thus void *ab initio*. Defendant states that he "has found no opinion examining the constitutionality of [§ 16913] under a Commerce Clause analysis." Brief in Support of Motion (docket no. 12-2), at 11 n.2. The government does not respond to Defendant's argument, although it states generally that "SORNA represents a valid exercise of Congressional power under the Commerce [C]lause and is therefore constitutional."[5]

The court holds that § 16913 cannot be justified under the Commerce Clause. Section 16913 does not fall within any of the three *Lopez* categories. The first category does not apply, because § 16913 is not an attempt to regulate the use of the channels of interstate commerce. The second category does not apply, because § 16913 is not an attempt to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce. Unlike § 2250, § 16913 is not limited to persons who travel across state lines; the latter statute contains no jurisdictional element and reaches purely intrastate activity insofar as sex offenders who never cross state lines are required to register. The third category does not apply, because there is no evidence in the record that the registration of sex offenders has a substantial relation to interstate commerce, *i.e.*,

---

[5] Defendant did not file a reply to the Resistance and does not argue that the government waived its right to argue that § 16913 is constitutional. Given the nature of the Motion, the court declines to deem the argument waived. "Due respect for the decisions of a coordinate branch of Government demands that [a court] invalidate a congressional enactment only upon a plain showing that Congress has exceeded its constitutional bounds." *Morrison*, 529 U.S. at 607.

there is no evidence that "sex offending" is an activity that substantially affects interstate commerce. Much like the statute at issue in *Lopez*, § 16913 "by its terms has nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms." 514 U.S. at 561; *see also Gonzales v. Raich*, 545 U.S. 1, 25-6 (2005) ("'Economics' refers to 'the production, distribution, and consumption of commodities.'" (quoting Webster's Third New International Dictionary 720 (1966))). There are no Congressional findings that would "enable [the court] to evaluate the legislative judgment that ['sex offending'] substantially affect[s] interstate commerce, even though no such substantial effect [is] visible to the naked eye." *Id.* at 563. Any argument that Congress is permitted to enact § 16913 under the Commerce Clause would appear to be too attenuated and, if accepted, "'would effectually obliterate the distinction between what is national and what is local and create a completely centralized national government.'" *Id.* at 557 (quoting *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 37 (1937)).

Accordingly, the court holds that § 16913 exceeds Congress's power under the Commerce Clause. This holding does not entail Defendant's conclusion that § 16913 is unconstitutional and the court must dismiss the Indictment. Section 16913 may be sustained under a related but analytically distinct Congressional power, the Necessary and Proper Clause. *See, e.g., United States v. Peltier*, 446 F.3d 911, 914 (8th Cir. 2006) (holding that the Necessary and Proper Clause authorized a statute, even though the defendant lodged a related Commerce Clause challenge).

The Necessary and Proper Clause delegates to Congress the power to "make all Laws which shall be necessary and proper for carrying into Execution the [Congressional] Powers" enumerated in the Constitution, "and all other Powers vested by [the] Constitution in the Government of the United States." U.S. Const. art. I, § 8, cl. 18. The Necessary and Proper Clause affords Congress broader power than its terms "necessary" and "proper" might suggest. The Supreme Court "long ago rejected the view that the

Necessary and Proper Clause demands that an Act of Congress be '*absolutely* necessary' to the exercise of an enumerated power." *Jinks v. Richland County, S.C.*, 538 U.S. 456, 462 (2003) (quoting *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 414-15 (1819)) (emphasis added). In *McCulloch*, the Supreme Court stated the proper standard:

> [W]e think the sound construction of the constitution must allow to the national legislature that discretion, with respect to the means by which the powers it confers are to be carried into execution, which will enable that body to perform the high duties assigned to it, in the manner most beneficial to the people. Let the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the constitution, are constitutional.

*Id.* at 421 (quoted with approval in *In re Young*, 141 F.3d 854, 861 (8th Cir. 1998)).

When used as a corollary to the Commerce Clause, the Necessary and Proper Clause provides that, "[w]here necessary to make a regulation of interstate commerce effective, Congress may regulate even those intrastate activities that do not themselves substantially affect interstate commerce." *Gonzalez*, 545 U.S. at 35 (Scalia, J., concurring). "Congress may regulate even noneconomic local activity if that regulation is a necessary part of a more general regulation of interstate commerce." *Id.* at 37 (citing *Lopez*, 514 U.S. at 561). "The relevant question is simply whether the means chosen are 'reasonably adapted' to the attainment of a legitimate end under the commerce power." *Id.* (quoting *United States v. Darby*, 312 U.S. 100, 121 (1941)).

The court concludes that § 16913 is an appropriate and reasonably adapted means by Congress to attain the legitimate end of § 2250, *i.e.*, monitoring sex offenders who cross state lines. To be certain, § 16913's blanket-registration requirement is not narrowly tailored or absolutely necessary to attain such end. For example, Congress could have taken a less drastic step and only required sex offenders who have certain qualifying life

16

events (*e.g.*, a change in employment, school or residence) and actually travel in interstate commerce to register immediately after such travel takes place. Instead, § 16913 is over-inclusive and reaches those sex offenders who change jobs, schools or residences but never travel across state lines. Even so, the court concludes that § 16913 represents a reasonable, good-faith effort on the part of Congress to monitor sex offenders who cross state lines. It must be remembered that we live in a very mobile society. *See, e.g.*, *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 758 (1998). There can be no doubt that sex offenders, like other Americans, frequently change jobs, schools or residences. *See id.*[6] Congress may have determined that it was unworkable, as a practical matter, to devise and enforce a sex-offender registration system that could monitor only those sex offenders who traveled in interstate commerce. Recognizing the federalism concerns that the Supreme Court expressed in *Lopez* and *Morrison*, however, Congress limited federal criminal enforcement of § 16913 to instances in which the sex offender crosses state lines. *See* 18 U.S.C. § 2250(a); *see, e.g., United States v. Pitts*, No. 07-157-A, 2007 WL 3353423, *4 (M.D. La. Nov. 7, 2007) (upholding SORNA against constitutional challenge in part because of Congressional restraint in formulating § 2250(a)). Congress must be afforded the opportunity to use its "discretion . . . , with respect to the means by which [its] powers . . . are to be carried into execution . . . in the manner most beneficial to the people." *McCulloch*, 17 U.S. (4 Wheat.) at 421. Therefore, the court concludes that Congress had the authority to enact § 16913 and make it applicable to § 2250. U.S. Const. art. I, § 8, cl. 18.

---

[6] Defendant, a homeless sex offender who lived in his car at the time of his arrest, is but one example. *See also Recent Legislation, Washington State Community Protection Act Serves as a Model for Other Initiatives by Lawmakers and Communities*, 108 Harv. L. Rev. 787, 790 (1995) (stating that sex offender notification schemes "aim to hold lawbreakers, both pre-and post-conviction, more accountable for their actions by stripping them of the anonymity afforded by modern society").

Accordingly, the court holds that § 16913 is constitutional under the Necessary and Proper Clause.

## V. DISPOSITION

The Motion (docket no. 12) is **DENIED**. The time between the filing of the Motion and the date of this Order is excluded from calculation under the Speedy Trial Act. *See* 18 U.S.C. § 3161(h)(1)(F) (excluding delay resulting from the filing of any pretrial motion through the conclusion of the hearing thereon); *id.* § 3161(h)(1)(J) (excluding "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court").

**IT IS SO ORDERED.**

**DATED** this 13th day of February, 2008.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA